UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04638-MRA-PD | Date | May 29, 2025 |
|---|---|---|---|
| Title | Dabona Tang v. Kristi Noem, et al. | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Gabriela Garcia | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER (1) TEMPORARILY ENJOINING RESPONDENTS FROM TRANSFERRING, RELOCATING, OR REMOVING PETITIONER, (2) OTHERWISE DENYING PETITIONER'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [ECF 8], AND (3) REQUIRING RESPONDENTS TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Before the Court is Petitioner's Ex Parte Application for a Temporary Restraining Order (the "TRO Application"). ECF 8. The Court read and considered the TRO Application. For the reasons stated herein, the Court **DENIES** the TRO Application, but further **ORDERS** that Respondents are (a) **TEMPORARILY ENJOINED** from transferring, relocating, or removing Petitioner from the United States without an Order from this Court, and (b) **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue.

I.    **BACKGROUND**

The Petition for Writ of Habeas Corpus and the TRO Application allege the following:

Petitioner Dabona Tang ("Petitioner" or "Tang"), a native and citizen of Vietnam, was born in a refugee camp in the Philippines and entered the United States as a refugee when he was less than three months old. ECF 1 (Pet.) ¶ 2; ECF 8 (Appl.) ¶ 5, Ex. 1. He has never resided or visited Vietnam and has no connection to the Philippines. Pet. ¶ 2; Appl. ¶ 5. He has permanently resided in the United States his entire life. Pet ¶ 2; Appl. ¶ 5.

While attending college, Tang was arrested and ultimately pled guilty for violating 21 U.S.C. § 841(a)(1). Pet. ¶ 3. He was sentenced to 12 months in federal prison, followed by 12 months of home confinement with electronic monitoring. *Id.* Following his conviction, Tang was transferred to the custody of Immigration and Customs Enforcement ("ICE") and served with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04638-MRA-PD | Date | May 29, 2025 |
|---|---|---|---|
| Title | Dabona Tang v. Kristi Noem, et al. | | |

a Notice to Appear. *Id.* ¶ 4. The Immigration Judge ("IJ") ordered Tang removed on February 17, 2011. *Id.*; Appl. ¶ 6, Ex. 3. Because Vietnam would not cooperate in facilitating Tang's physical removal from the United States, Petitioner remained in immigration custody. Pet. ¶ 4. After 180 days, Tang was released on an order of supervision ("OSUP"). *Id.* ¶¶ 4, 29; Appl. ¶ 5, Ex. 4. He has remained on that OSUP since then. *Id.* During this time, he has regularly checked in with ICE and not violated any law as required under the terms of his supervision. *Id.* ¶ 4; Appl. ¶ 6.

Tang is now married to a U.S. citizen and is the caregiver to one biological child and two stepchildren. Pet. ¶ 5; Appl. ¶¶ 6-7, Exs. 5-7. He is employed as a home healthcare worker for his parents and is their primary caregiver. *Id.* ¶ 5-6. Both his parents suffer from health conditions. Pet. ¶ 6; Appl. ¶ 7. His parents cannot drive. Pet. ¶ 6; Appl. ¶ 7. His father is elderly, and his mother has diabetes, is handicapped, has difficulty completing simple tasks at home, and requires significant care and medical visits. Pet. ¶ 6; Appl. ¶ 7. Tang is responsible for taking his parents grocery shopping, running their errands, taking them to doctor appointments, picking up his mother's medication, and assisting with house chores. Pet. ¶ 6; Appl. ¶ 7. He was also recently involved in a car accident that has caused him to suffer back problems requiring continuous medical care. Appl. ¶ 8.

On May 21, 2025, Tang presented himself for a regular ICE check-in at the Los Angeles Field Office. Pet. ¶ 25. He was informed by Immigration Officer R. Lee (10799) and Jose Casillas, Duty Supervisory Detention and Deportation Officer ("SDDO") at the Los Angeles Field Office, that his OSUP was being revoked because he "has a valid final order of removal." *Id.* ¶¶ 14-15, 25; Appl. ¶ 9. He was not informed that his supervision was being revoked for violating the conditions of his release. Pet. ¶ 25; Appl. ¶ 9. The ICE officials also indicated that they had not yet sent a request to Vietnamese authorities for a travel document prior to detaining Tang. Pet. ¶ 25; Appl. ¶ 9. Tang was told that a "new policy" allowed him to be taken into custody. Pet. ¶ 25. Tang was given certain redetention documents, including a warning of his removability and a warrant for his immigration arrest. Appl. ¶ 10, Ex. 8. The documents do not state any basis for revoking his OSUP.

On May 22, 2025, Petitioner filed his Petition for Writ of Habeas Corpus (the "Petition"). Pet. At the time of filing, Petitioner was detained in Los Angeles, California, within the Central District of California. Appl. ¶ 3. At some point after the Petition was filed, Petitioner was transferred to Northwest Detention Center in Tacoma, Washington, within the Western District of Washington. Appl. ¶ 3, Ex. 8.

On May 28, 2025, the assigned Magistrate Judge issued an Order directing the Clerk to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04638-MRA-PD | Date | May 29, 2025 |
|---|---|---|---|
| Title | Dabona Tang v. Kristi Noem, et al. | | |

promptly serve the Petition and Order on Respondents Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); Todd M. Lyons, Acting Director of ICE; Ernesto Santa Cruz, Acting Director of Los Angeles ICE Field Office, Casillas; and Lee (collectively, "Respondents" or "the government").   ECF 6 ¶ 1.   Respondents were further ordered in relevant part to file and serve a Notice of Appearance no later than May 29, 2025.   *Id.* ¶ 3.   That same day, the Magistrate Judge amended the Order to provide that **"[w]here the Petitioner challenges a final order of removal, Respondent <u>Shall Not</u> remove Petitioner prior to the resolution of this action without providing reasonable notice to the Court.**"

On May 28, 2025, Petitioner filed the instant TRO Application, requesting that the Court find and order the following relief, in relevant part: (1) Tang's redetention violates his Fifth Amendment right to due process; (2) a TRO is necessary to ensure that Respondents do not continue violating his constitutional rights; and (3) Tang remain released without bond unless and until he receives adequate notice and a hearing to determine the legality of his redetention.   Appl. at 11.   Petitioner's counsel represents that earlier on the day of filing, he contacted Joanne Osinoff of the U.S. Attorney's Office (the "USAO") for the Central District of California via email informing her of the nature of the proceedings and that the Clerk had served the Petition on the USAO.   Appl. ¶ 21, Ex. 9 (Ortiz Decl.) ¶ 4.   He requested the government's position on the TRO Application, but as of May 28, 2025, at 3:03 p.m., he had not received a response.   Ortiz Decl. ¶¶ 4-5.

## II.   <u>LEGAL STANDARD</u>

Ex parte applications for a temporary restraining order ("TRO") are "no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo."   *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974) (internal citation omitted). As such, there are "very few circumstances justifying the issuance of an ex parte TRO."   *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (explaining that ex parte TROs are generally limited to cases where "notice to the adverse party is impossible" or where notice "would render fruitless the further prosecution of the action").   Federal Rule of Civil Procedure 65(b) provides that a TRO may issue without written or oral notice to the adverse party or its attorneys only if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04638-MRA-PD | Date | May 29, 2025 |
|---|---|---|---|
| Title | Dabona Tang v. Kristi Noem, et al. | | |

Fed. R. Civ. P. 65(b)(1).

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Alternatively, under the Ninth Circuit's "sliding scale" approach, the four elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may also issue when a plaintiff raises "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.* at 1135.

### III.    DISCUSSION

Petitioner has not fully complied with the Rule 65(b) requirements for issuance of a TRO without notice. As an initial matter, the Court construes the TRO Application as an ex parte request made without notice because service by email is not designed to ensure notice. *See, e.g.*, *White v. Dietrich*, No. 1:24-cv-01395-IM, 2024 WL 3971140, at *3 (D. Or. Aug. 26, 2024) (explaining that service of a complaint and ex parte application for a TRO by email and CM/ECF is "insufficient"); *Tucson Indoor Football LLC v. FBG Enters. Opco LLC*, No. CV-24-00086-TUC-SHR, 2024 WL 639930, at *2 (D. Ariz. Feb. 15, 2024) (finding notice of TRO by email deficient where Defendant's Counsel denied ever receiving the application); *Concordia Partners, LLC v. Marcelle Pick & Pick Enters., LLC*, No. 2:13-cv-415-GZS, 2013 WL 5988568, at *2 (D. Me. Nov. 12, 2013) (describing attempted notice of ex parte application for TRO by email as "informal" and concluding that plaintiff "ha[d] not yet completed formal service"). Moreover, the TRO Application does not set forth "specific facts in an affidavit or a verified complaint" in support of the requested relief. Fed. R. Civ. P. 65(b)(1)(A). Although Petitioner's counsel has adequately certified "any efforts made to give notice," he does not elaborate on "the reasons why

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04638-MRA-PD | Date | May 29, 2025 |
|---|---|---|---|
| Title | Dabona Tang v. Kristi Noem, et al. | | |

it should not be required." *Id.* 65(b)(1)(B).

Given these deficiencies, the Court does not find that Petitioner has made a clear showing that he is entitled to relief before Respondents have had an opportunity to respond. The Court is mindful that "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Court also recognizes "the irreparable harms imposed on anyone subject to immigration detention (or other forms of imprisonment)." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (describing "subpar medical and psychiatric care," "economic burdens imposed on detainees and their families," and "the collateral harms to children of detainees whose parents are detained" at ICE facilities). Yet in the absence of probative evidence, such as an affidavit or declaration from Petitioner, the Court finds that Petitioner has merely alleged, but not demonstrated, immediate, irreparable harm. *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Temporary injunctive relief limited to preserving the Court's jurisdiction over this matter is nevertheless warranted. Under the All Writs Act, federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Although the All Writs Act does not enlarge a federal court's jurisdiction, *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999), it provides the court with "express authority . . . to issue such temporary injunctions as may be necessary to protect its own jurisdiction," *F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 608 (1966); *see also ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 n.19 (5th Cir. 1978) ("A federal court has the power under the All Writs Act to issue injunctive orders in a case even before the court's jurisdiction has been established. When potential jurisdiction exists, a federal court may issue status quo orders to ensure that once its jurisdiction is shown to exist, the court will be in a position to exercise it."); *Michael v. I.N.S.*, 48 F.3d 657, 659 (2d Cir. 1995) (holding that All Writs Act empowers a federal court to stay orders of deportation in order to safeguard its appellate jurisdiction).

Petitioner's claims fall within the scope of the Court's habeas jurisdiction.[1] Indeed, it is

---

[1] Petitioner's subsequent transfer from California to Washington does not strip the Court of habeas jurisdiction. A district court's jurisdiction over a § 2241 petition "attaches on the initial filing for habeas corpus relief and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990). Thus, "once a petitioner has properly filed a habeas petition in the district of confinement, any subsequent transfer does not strip the filing district of habeas jurisdiction." *Rincon-Corrales v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | 2:25-cv-04638-MRA-PD | Date | May 29, 2025 |
|---|---|---|---|
| Title | Dabona Tang v. Kristi Noem, et al. | | |

well-established that the primary federal habeas corpus statute, 28 U.S.C. § 2241, "remain[s] available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).   Under the statutory scheme, when a noncitizen is ordered removed, removal must be effectuated within a period of 90 days, 8 U.S.C. § 1231(a)(1)(A), and the noncitizen must be detained during that period, *id.* § 1231(a)(2).   Once that time elapses, however, § 1231(a)(6) provides that certain noncitizens "may be detained beyond the removal period."   The Constitution limits this post-removal-period detention to "a period reasonably necessary to bring about that [noncitizen]'s removal from the United States.   It does not permit indefinite detention."   *Zadvydas*, 533 U.S. at 689.   Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [§ 1231(a)(6)" and DHS must release the noncitizen.   *Id.* at 699.

Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release.   8 U.SC. § 1231(a)(3), (6).   The revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes DHS to revoke a noncitizen's release for violation of the conditions of release or for purposes of removal.   Specifically, a noncitizen who has been released under an OSUP may be returned to custody if he "violates any of the conditions of release," 8 C.F.R. § 241.13(i)(1), and he "may be continued in detention for an additional six months in order to effect the [noncitizen]'s removal, if possible, and to effect the conditions under which the [noncitizen] had been released," *id.*   A non-citizen's release may also be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."   *Id.* § 241.13(i)(2).   The revocation procedures are as follows:

> [T]he alien will be notified of the reasons for revocation of his or her release.   The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision.   The revocation custody review will include an evaluation

*Noem*, No. 2:25-CV-00801-APG-DJA, 2025 WL 1342851 (D. Nev. May 8, 2025) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004)); *see also Khalil v. Joyce*, No. 25-CV-01963 (MEF) (MAH), 2025 WL 972959, at *21 (D.N.J. Apr. 1, 2025) ("[A] court keeps power over a habeas case, even after the petitioner-detainee may been transferred out of the court's territory." (citing *Ex Parte Endo*, 323 U.S. 283, 307 (1944)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | 2:25-cv-04638-MRA-PD | Date | May 29, 2025 |
|---|---|---|---|
| Title | Dabona Tang v. Kristi Noem, et al. | | |

of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

*Id.* § 241.13(i)(3).   If the noncitizen is not released from custody following the informal interview, continued detention is governed by 8 C.F.R. § 241.4, which provides for periodic custody reviews.  *See* 8 C.F.R. §§ 241.4, 241.13(i)(2).

Petitioner was released from post-removal-period detention after 180 days once it was determined that his removal was not reasonably foreseeable.   Approximately 14 years later, his supervision was revoked, and he was returned to custody purportedly in violation of the revocation regulations.   As alleged, Petitioner was not notified of the reasons for the revocation, nor was he promptly interviewed or otherwise afforded an opportunity to respond to the government's purported reasons for redetention.   He was not made aware of any "changed circumstances" reflecting a "significant likelihood" that he will be removed in the reasonably foreseeable future. And although ICE allegedly indicated that it has yet to obtain a travel document from Vietnamese authorities, Petitioner was transferred within days of his revocation from California to Washington, raising the prospect of either prolonged detention or imminent deportation without further notice.[2]   Such deprivations lie "at the heart of the liberty" protected by the Due Process Clause.  *Zadvydas*, 533 U.S. at 690.   Petitioner's removal, if indeed imminent, may gravely undermine the Court's jurisdiction to remedy Petitioner's purportedly unlawful detention.   *See Abrego Garcia v. Noem*, No. 25-1345, 2025 WL 1021113, at *4 (4th Cir. Apr. 7, 2025) (Thacker, concurring) (noting the United States' argument that a district court lacks the jurisdiction to compel the Executive Branch to return an erroneously-removed noncitizen to the United States).

In such circumstances, the Court finds that a TRO maintaining the status quo is necessary to preserve the Court's jurisdiction to consider the request for relief presented in the Petition and TRO Application and afford the parties an opportunity to develop a more comprehensive record on an order to show cause why a preliminary injunction should not issue.

//

---

[2] To the extent Respondents intend to remove Petitioner to a third country, *i.e.*, a country other than the one designated on the order of removal, at least one federal court has held that such third-country removals must be preceded by written notice to the non-citizen and her counsel, followed by a meaningful opportunity to raise a fear-based claim.  *See, e.g.*, *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04638-MRA-PD | Date | May 29, 2025 |
|----------|----------------------|------|--------------|
| Title | Dabona Tang v. Kristi Noem, et al. | | |

## IV.  **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Petitioner's TRO Application and further **ORDERS** as followed:

1.     Respondents are **TEMPORARILY ENJOINED FOR TEN DAYS** from further transferring, relocating, or removing Petitioner from the United States without an Order from this Court.  *See also* ECF 7.

2.     Petitioner may supplement the TRO Application in support of a preliminary injunction by no later than **June 3, 2025**.  Respondents are thereafter **ORDERED TO SHOW CAUSE** in writing no later than **June 6, 2025**, why a preliminary injunction should not issue. *See* L.R. 65-1.  Petitioner may file a response no later than **June 8, 2025**.  The hearing on the Order to Show Cause is set for **June 9, 2025, at 1:30 p.m**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Deputy Clerk     gga